UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHEILA HEMPHILL,

    *Plaintiff*,

v.

DEPARTMENT OF TREASURY *et al.*,

    *Defendants.*

Civil Action No. 21-673 (TJK)

## MEMORANDUM OPINION

Plaintiff Sheila Hemphill was entitled to monthly annuity payments because of her ex-husband's years of service as a police officer for the Metropolitan Police Department. But after he died, the District of Columbia Retirement Board decided she was no longer entitled to them, and a component of the Department of the Treasury affirmed that decision. Plaintiff sued, and both Defendants moved to dismiss on the grounds that her complaint fails to state a claim. For the reasons below, the Court will grant the motions and dismiss the case.

**I.    Background**

    **A.    Statutory Framework**

Employees of the Metropolitan Police Department ("MPD") may participate in the District of Columbia Officers and Firefighters Retirement Plan ("the Plan"), which is codified in District of Columbia law. *See* D.C. Code § 5-701, *et seq.* Among other things, the Plan entitles retired, former members to a monthly annuity payment—based on their average pay while employed by MPD—if they meet certain criteria. *See id.* § 5-712.

The District of Columbia and the federal government share responsibilities related to the Plan. *See* Balanced Budget Act of 1997, Pub. L. No. 105-33; *Rivera v. Lew*, 949 F. Supp. 2d

266, 267 (D.D.C. 2013).  For example, the federal government is responsible for retirement payments related to service performed before June 30, 1997, and the District of Columbia covers payments for service performed after that date.  *See* Balanced Budget Act of 1997, Pub. L. No. 105-33, 111 Stat. 717–18; D.C. Code § 1-803.02.  Moreover, both the District of Columbia and the federal government split the relevant administrative responsibilities.  The District of Columbia Retirement Board ("DCRB") handles initial applications for plan benefits and makes individualized determinations of benefit eligibility, but the Department of Treasury's Office of D.C. Pensions ("ODCP") adjudicates appeals from DCRB determinations relating to individuals claiming a federal benefit (*i.e.*, benefits resulting from services performed before June 30, 1997).[1]  *See Rivera*, 949 F. Supp. 2d at 267.  The Balanced Budget Act of 1997 grants exclusive jurisdiction to this Court to review the ODCP's final benefit decisions.  *See* Pub. L. 105-33, 111 Stat. 728 (codified at D.C. Code § 1-815.02(a)).

Relevant here, the Plan enumerates what happens to outstanding benefits when a retired, former member dies.  *See id.* § 5-716.  The Plan provides that upon "the death of . . . any former member after retirement . . . leaving a widow or widower, such a widow or widower shall be entitled to receive an annuity" according to various criteria.  *Id.* § 5-716(b).  The Plan defines "widow" as the "surviving wife of a member or former member."  *Id.* § 5-701(3)(A).

Notwithstanding those terms, District of Columbia law provides another mechanism for a former spouse to seek annuity benefits upon the death of a former Plan member.  The D.C. Spouse Equity Act of 1988 provides that the District of Columbia must comply with "any

---

[1] As a result, the DCRB also argues that it should be dismissed as an improper defendant because ODCP bears ultimate financial and administrative responsibility over the annuity benefit at issue. But because the Court will grant the motion to dismiss the entire complaint, this request is moot. *Cf. Abbas v. Foreign Policy Group, LLC*, 975 F. Supp. 2d 1, 20 (D.D.C. 2013) (determining that some of the defendants' arguments were moot after granting a motion to dismiss).

2

qualifying court order" as to benefit allotment.  D.C. Code § 1-529.03(b).  "Qualifying court order" is defined in the Spouse Equity Act as a court order that "by its terms awards to a former spouse all or a portion of an employee's or retiree's retirement benefits . . . or a survivor annuity."  *Id.* § 1-529.02(c).  And with a survivor annuity, a qualifying court order must "state the former spouse's entitlement to a survivor annuity."  *Id.*  The practical effect of this statutory scheme is that a former spouse may qualify for a survivor annuity under the D.C. Spouse Equity Act, even if he or she does not automatically qualify for a survivor annuity under the Plan.

    **B.**    **Plaintiff's Complaint**

Plaintiff alleges the following in the Complaint and in documents attached to or referenced in it: Plaintiff and Melvin Hemphill were married in 1969.  ECF No. 1-1 at 12.  Melvin Hemphill began serving as a police officer with MPD in 1968 and retired in 1994.  *Id.*  The two divorced in 1995.  *Id.*  As a result of his service, Melvin Hemphill qualified for and received monthly annuity payments under the Plan.  ECF No. 1-1 at 12–13.  When he and Plaintiff divorced, a Maryland state court executed a Judgment of Absolute Divorce, which provided that Plaintiff was entitled to 50% of the jointly owned marital portion of his annuity.  ECF No. 13-3 at 3.  That judgment also provided the following formula to determine how much of the annuity was marital property: the number of years married (26) divided by the number of years of pension contribution (27).  *Id.*  The court also entered a Qualifying Court Order ("QCO") that further defined Plaintiff's entitlement to a portion of the annuity payments.  The QCO provides that she is entitled to 48% of her ex-husband's gross annuity in the form of monthly payments.[2]  ECF No. 1-1 at 13.  Further, the QCO provides that payments to Plaintiff

---

[2] The 48% figure is a simplified version of the formula included in the Judgment of Absolute Divorce (26 divided by 27 multiplied by one-half).

3

would terminate upon the death of her ex-husband and that nothing in the order could be construed to confer benefits to Plaintiff other than those specified in the Plan. *Id.*

Melvin Hemphill died in December 2019. ECF No. 1-1 at 7. Plaintiff received a payment for that month, but in early January 2020, the DCRB informed her that she would no longer receive her monthly payments. *Id.* On February 4, 2020, the DCRB denied Plaintiff's request to continue her monthly payments. *Id.* Plaintiff requested reconsideration of that determination in February 2020, which the DCRB denied the next month. *Id.*

In May 2020, Plaintiff appealed the DCRB's determination to the ODCP.[3] *Id.* at 8. The ODCP denied the appeal. *Id.* In a letter to Plaintiff in September 2020, the ODCP explained that she was not entitled more annuity payments because the QCO in her divorce proceedings specifically says that she is not entitled to payments upon the death of her ex-husband. *Id.* at 6, 8–9. The letter also explained that because Plaintiff and her ex-husband divorced before his death, she is not entitled to benefits as a widow under the Plan. *Id.* at 8–9.

In March 2021, Plaintiff, proceeding *pro se*, sued the two Defendants, the DCRB and ODCP, seeking review of the ODCP's denial of her appeal. ECF No. 1. She alleges, as explained in more detail below, both a claim for a survivor annuity benefit and a claim for a retroactive increase in the benefits paid to her before her ex-husband died. *Id.*

## II.   Legal Standard

The standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6) is well known. A plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation omitted). "[D]etailed factual allegations" are unnecessary to survive a

---

[3] Based on ODCP's decision, it does not appear that Plaintiff claimed she was entitled to 50%, (rather than 48%) of the monthly annuity payments.

4

motion to dismiss, *id.*, although a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Twombly*, 550 U.S. at 570).  Upon review, a court must "accept as true all of the factual allegations contained in the complaint," *Atherton v. District of Columbia*, 567 F.3d 672, 681 (D.C. Cir. 2009), but it need not adopt "inferences that are unsupported by the facts set out in the complaint," *Bowe-Connor v. Shinseki*, 845 F. Supp. 2d 77, 84 (D.D.C. 2012).[4]

Generally, when considering a motion to dismiss, a court cannot consider materials outside the pleadings without converting that motion into a motion for summary judgment.  *See Scott v. Dist. Hosp. Partners, LP*, 60 F. Supp. 3d 156, 161 (D.D.C. 2014); *see also* Fed. R. Civ. P. 12(d).  A court can, however, consider documents attached to a motion to dismiss without converting the motion into one for summary judgment as long as the document is referenced in the plaintiff's complaint and is central to the plaintiff's claims.  *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015); *Scott*, 60 F. Supp. 3d at 161.

### III.   Analysis

#### A.   Claim for Survivor Annuity Benefit

Plaintiff first alleges that she is entitled to a survivor annuity even after her ex-husband died.  She contends that she qualifies for these benefits under District of Columbia law and references divorce paperwork that awarded her 50% of the marital property.[5]  She also points to

---

[4] On a motion to dismiss a complaint challenging agency action, a court does not defer to the agency's decision as it would when considering a motion for summary judgment.  *See Betesfa, Inc. v. United States*, 410 F. Supp. 3d 132, 137 (D.D.C. 2019) (applying usual "motion to dismiss" standard); *Ctr. for Responsible Science v. Gottlieb*, 311 F. Supp. 3d 5, 8 (D.D.C. 2018) (same).  Thus, as the parties agree, the typical "motion to dismiss" standard applies.

[5] Plaintiff attaches several documents to her complaint, including the QCO related to her divorce, the letter from the ODCP affirming the termination of her annuity payments, and relevant DCRB documents.  ECF No. 1-1 at 2, 4, 6–14.  The DCRB attaches the Judgment of Absolute Divorce

several documents from the DCRB that purportedly verify she is entitled to a survivor annuity benefit until she dies. ECF No. 1 at 3; ECF No. 1-1 at 2,4. Defendants argue that even if these allegations are true, the relevant statutory framework forecloses Plaintiff's claim for relief. The Court agrees.

The law governing the Plan is conclusive: absent a court order to the contrary, former spouses are not entitled to survivor annuity payments upon the death of a Plan beneficiary. *See* D.C. Code § 5-701, *et seq.*; *id.* §§ 1-529.02–03. The District of Columbia Code states that "[i]n the case of the death . . . of any former member after retirement . . . leaving a widow or widower, such widow or widower shall be entitled" to receive an annuity payment. *Id.* § 5-716(b). The Code defines "widow," among other things, as the "surviving wife of a member or former member." *Id.* § 5-701(3). Plaintiff was no longer Melvin Hemphill's wife when he died, and she thus does not meet the Plan's statutory requirements to qualify for a survivor annuity benefit.

Plaintiff is also ineligible for a survivor annuity benefit under the D.C. Spouse Equity Act of 1988, as she alleges. That law provides that a former spouse is entitled to a survivor annuity if the former spouse has obtained a "qualifying court order," which "by its terms awards to a former spouse . . . a survivor annuity." *Id.* § 1-529.02(c). Plaintiff's divorce documents do not meet the requirements that the D.C. Spouse Equity Act establishes. To the contrary, the QCO states that Plaintiff's "[p]ayments under the Plan shall terminate upon the death of" her ex-husband and that Plaintiff "shall not be entitled to any benefits upon the death of" her ex-husband. ECF No. 13-4 ¶ 9.

---

to its motion to dismiss, ECF. No. 13-3, on which Plaintiff relies and which Plaintiff references in her complaint, *see, e.g.*, ECF No. 1 at 2–4. No party disputes the authenticity of these documents. *See Feld Entertainment, Inc. v. Am. Soc. For the Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288, 323 (D.D.C. 2012). Thus, the Court may resolve these motions without converting them to motions for summary judgment. *See Banneker Ventures*, 798 F.3d at 1133.

Plaintiff alleges that she received documents from the DCRB verifying that she is entitled to annuity payments during her entire life, and she points out that these documents were created after her divorce was finalized.  *See* ECF No. 1 at 4–5.  But these documents—which Defendants say are simply a mistake—are far from a qualifying court order that could override the default provisions of the Plan under the D.C. Spouse Equity Act.  Although they *do* say that Plaintiff is entitled to a survivor annuity, they do not purport to adjudicate the matter in any way, ground her alleged annuity in a court order connected to her divorce, or otherwise explain why she is so entitled.  Ultimately, whatever their backstory, these documents cannot create a right to annuity payments where no such right exists under the law.[6]

For these reasons, Plaintiff has not stated a claim that she is entitled to a survivor annuity benefit.

### B.    Plaintiff's Claim for an Increase in Benefit

Second, Plaintiff alleges that she is entitled to a higher percentage of the annuity payments she received when her ex-husband was alive.  She contends that because the Judgment of Absolute Divorce awarded her 50% of all marital property, the 48% of the annuity payments that she received was too low.  She asks the Court to direct the relevant government entity to correct her share to 50% to make her whole.

Defendants maintain that the Court lacks jurisdiction to entertain this claim because Plaintiff did not raise it before ODCP and thus did not exhaust her administrative remedies.  ECF No. 14 at 13.  But absent a "sweeping and direct statutory language indicating that there is no federal jurisdiction prior to exhaustion," any exhaustion requirement is "treated as an element of

---

[6] The Court also notes that "the payment of money from the Treasury must be authorized by statute."  *See OPM v. Richmond*, 496 U.S. 414, 424.  Thus, even if Plaintiff had alleged that she was entitled to equitable relief, the Court is foreclosed from award her such relief.  *See id.* at 426.

the underlying claim." *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1248 (D.C. Cir. 2004) (quotation and citation omitted). Defendants have not argued that the relevant statute contains language of this sort, and so this motion to dismiss is "properly addressed as [a] motion[] to dismiss for failure to state a claim." *Scott*, 60 F. Supp. 3d at 161; *see also Masson v. Aramark Inc.*, 310 F. Supp. 3d 128, 129 (D.D.C. 2018). Thus, the Court proceeds to the merits.[7]

Plaintiff has failed to state a claim for more of the annuity than she has already received. According to the Judgment of Absolute Divorce, she is entitled to one-half of all marital property. And as for her ex-husband's annuity, the judgment calculates marital property as the number of years married divided by the number of years he worked for MPD (26 divided by 27). ECF No. 13-3 at 3. Thus, Plaintiff was entitled to one-half of *that* dividend: about 48% of the annuity payments, as reflected in the QCO. ECF No. 13-4 ¶ 6. She received 48% of her husband's annuity payments during his lifetime. She has not stated a claim for more.

## IV.    Conclusion

For the above reasons, Defendants' Motions to Dismiss, ECF Nos. 13, 14, will be granted. And because any additional allegations consistent with those in the complaint would not cure its deficiency, the complaint will be dismissed with prejudice. *See Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012). A separate order will issue.

/s/ Timothy J. Kelly<br>
TIMOTHY J. KELLY<br>
United States District Judge

Date: October 29, 2021

---

[7] In any event, "the law of [this] circuit allows a court to assume hypothetical *statutory* jurisdiction" to reach the merits of a dispute. *Am. Hosp. Assoc. v. Azar*, 964 F.3d 1230, 1246 (D.C. Cir. 2020); *see also Kramer v. Gates*, 481 F.3d 788, 791 (D.C. Cir. 2007).